HONORABLE STEVE C. JONES, UNITED STATES DISTRICT JUDGE
This matter appears before the Court on Defendant's Motion to Dismiss the Complaint (Doc. No. [5] ).
*1359 I. FACTS
Plaintiff VaShaun Jones filed a Complaint against Defendant Family First Credit Union on November 15, 2017, alleging that Defendant discriminated against him on the basis of disability in violation of Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12181, et seq.[1] in constructing and maintaining a website (www.ffcuga.org) that is inaccessible to the blind and visually impaired and failing to take adequate actions to correct the barriers. Doc. No. [1], ¶ 25.[2] Plaintiff states that he is permanently blind, and uses a screen reader to access the internet and read website content. Id. ¶¶ 2, 7. Plaintiff asserts that Defendant denied him the full use and enjoyment of the facilities and services of its website as a result of accessibility barriers. Id. ¶¶ 2, 16. Plaintiff further states: "[d]ue to the inaccessibility of ffcuga.org, blind and otherwise visually impaired customers who use screen readers are hindered from effectively browsing for FFCU's locations, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users." Id. ¶ 19. Plaintiff states that due to numerous access barriers contained on Defendant's website, he has been deterred from visiting Defendant's physical locations. Id. ¶¶ 7, 20.
At the conclusion of his Complaint, Plaintiff seeks preliminary and permanent injunctive relief to enjoin Defendant from violating the ADA and requiring Defendant to take steps necessary to make its website readily accessible to and usable to visually-impaired individuals. Doc. No. [1], ¶ 16.
On December 11, 2017, Defendant filed a Motion to Dismiss the Complaint for failure to state a claim and lack of standing pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. No. [5]. This motion has been fully briefed and is now ripe for review.[3]
II. LEGAL STANDARD
"Whether a plaintiff has standing under Article III-which limits the cases or controversies a federal court can entertain-directly implicates a federal court's subject matter jurisdiction, and 'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.' " Loveland ex rel. Loveland v. State Farm Fire & Cas. Co., No. 13-20177, 2013 WL 1325365, at *1 (S.D. Fla. Apr. 1, 2013) (citing Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) ).[4]
*1360 " 'Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.' " Hollingsworth v. Perry, 570 U.S. 693, 704, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The United States Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130.[5]
The "injury-in-fact" demanded by Article III requires an additional showing when injunctive relief is sought. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328-29 (11th Cir. 2013) (citations omitted). "In addition to past injury, a plaintiff seeking injunctive [forward-looking] relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.' " Id."Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury.' " Id.; see also Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1283 (11th Cir. 2001).
"The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561, 112 S.Ct. 2130.[6] "At the pleading stage, *1361 general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.' " Id.; see also Spokeo, Inc. v. Robins, --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citations omitted).[7]
III. ANALYSIS
In its motion to dismiss, Defendant asserts that Plaintiff lacks standing to raise the issues of whether the ADA applies to Defendant's website and whether its website is non-compliant with the ADA. Doc. No. [5-1], p. 4. Defendant states that it is a state-chartered credit union, with membership limited to a specific group of individuals under Georgia law and that Plaintiff's Complaint does not suggest that he is in the membership field for Defendant's credit union. Doc.No. [5-1], p. 5. Defendant asserts that as a result of Plaintiff's failure to plead that he is within the member field of its credit union and that he could ever take advantage of the services Defendant offers, Plaintiff has no injury that can be redressed and thus, no standing to pursue this case. Id.
In opposition, Plaintiff begins his argument by setting forth the elements of an ADA cause of action and asserting that membership is not a requirement for standing. Doc. No. [14], p. 25. Plaintiff's response is focused on the statutory elements of an ADA cause of action, as opposed to a standing analysis. See e.g., Doc. No. [14], p. 17-20. "However, even if Plaintiffs have been injured within the meaning of Title III of the ADA, they must also show that their injuries satisfy the standing requirements of Article III of the Constitution to establish subject matter jurisdiction." Access 4 All, Inc. v. Chicago Grande, Inc., No. 06 C 5250, 2007 WL 1438167, at *4 (N.D. Ill. May 10, 2007) ;[8] see also Spokeo, 136 S.Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation."). " 'Injury-in-fact' is the touchstone of standing ...." Wooden, 247 F.3d at 1277.[9]
*1362 Because of what appears to be confusion as to the type of standing analysis, Plaintiff's briefing in the case sub judice never specifically addresses the three elements that the Supreme Court has established as the irreducible constitutional minimum of standing. Lujan, 504 U.S. at 560, 112 S.Ct. 2130. Even so, the standing inquiry still "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006).
The Court now considers the first element of the irreducible constitutional minimums of standing, i.e., injury in fact. " To establish injury-in-fact, a plaintiff must show that he suffered an invasion of a legally protected interest that is concrete and particularized[10] and actual or imminent, not conjectural or hypothetical. For an injury to be concrete, it must be real, and not abstract.[11] For an injury to be imminent, the anticipated injury must occur within some fixed period of time in the future. A legally cognizable injury requires infringement of an interest protected by statute or otherwise." Burdick v. Kennedy, 700 F. App'x 984, 986 (11th Cir. 2017) (citations, quotations, and alterations omitted).
After review, the Court aligns with the authority that holds that "[t]he barriers Plaintiff encountered when [he] tried to access Defendant's website constitute a concrete and particularized injury for purposes of establishing Article III standing .... [as] such barriers to access 'result in exclusion, segregation, and other differential treatment of persons with disabilities ...." Brintley v. Aeroquip Credit Union, 321 F.Supp.3d 785, 790 (E.D. Mich. 2018).[12] The injury in this case is not the denial of a sought-after-benefit, as appears to be asserted by Defendant, but the direct exposure to differential treatment of a person with a disability. Cf. Wooden, 247 F.3d at 1280 ("To reiterate, the injury in these kinds of cases [i.e., equal protection] is not the denial of the sought-after benefit, but rather the direct exposure to unequal treatment.").
As to the second element, the Court finds that said element is satisfied as Plaintiff's injury can be fairly traced to Defendant's challenged actions concerning the accessibility of its website.
The Court also finds that the third element of redressability is satisfied, and the Court is unable to uphold Defendant's membership arguments, set out above, as
Defendant's argument mistakenly assumes that the harm Plaintiff seeks to remedy is [his] inability to use Defendant's services. But, the harm for which Plaintiff seeks relief is [his] inability to access Defendant's website. As a result of the barriers on Defendant's website, Plaintiff [alleges that he] is unable to *1363 effectively browse for Defendant's locations, services, and membership eligibility. An order requiring Defendant to comply with Title III would provide Plaintiff with the opportunity to access the website and explore Defendant's amenities-precisely the same opportunity Defendant already affords to sighted individuals who are also non-members.
Brintley, 321 F.Supp.3d at 791.
As to standing and Plaintiff's request for injunctive relief, the Court's review of Plaintiff's Complaint shows that it "is devoid of allegations concerning Plaintiff's plans or intent to use Defendant's services in the future." Brintley, 321 F.Supp.3d at 790. Therefore, the Court finds that Plaintiff has not made the additional showing (of a real and immediate threat of future injury) required to establish injury in fact, when seeking injunctive relief. Houston, 733 F.3d at 1328-29 ; see also Elend, 471 F.3d at 1207 ("Because of the inquiry's focus on wholly prospective conduct, it follows that '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.' ") (citations omitted). At the conclusion of his brief, Plaintiff requests the opportunity to amend in the event that the Court finds Defendant's arguments to have merit. Doc. No. [14], p. 33. The Court finds that amendment to correct the standing pleading deficiencies is proper in this case.[13]
IV. CONCLUSION
Defendant's Motion to Dismiss the Complaint (Doc. No. [5] ) is hereby GRANTED IN PART and DENIED IN PART as the Court finds that Plaintiff has established standing to pursue his discrimination claim, but has not established standing for injunctive relief. The Court grants Plaintiff's request for amendment and ORDERS that Plaintiff shall have twenty-one days leave to amend the Complaint to correct the pleading deficiencies noted herein.
Plaintiff's Written Objection to Portions of Defendant's Memorandum (Doc. No. [14-6] ) is OVERRULED as the Court is not aware of a procedural rule that permits an objection to portions of a memorandum and the result of consideration of such an objection is an unpermitted expansion of the 25-page briefing limit.
Plaintiff's Request for Judicial Notice (Doc. No. [14-5] ) is DEEMED MOOT .
Defendant's Motion to Strike"Plaintiff's Written Objections to Evidence in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss the Complaint," (Doc. No. [16] ) is hereby DEEMED MOOT by the Court's ruling on the objection (above) and to the extent not moot, DENIED as the Court declines to exercise its inherent authority to strike a non-pleading.
Defendant's Motion for Judicial Notice (Doc. No. [18] ) is hereby DENIED as Plaintiff's litigation history is not relevant to the present ruling.
IT IS SO ORDERED, this 6th day of August, 2018.

"Title III of the ADA addresses 'Public Accommodations and Services Operated by Private Entities.' Section 12182(a) sets for the '[g]eneral rule' that '[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment' of the facilities or accommodations of 'any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.' " Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1329 (11th Cir. 2013) (citing 42 U.S.C. § 12182(a) ).

These barriers are: (1) linked image missing alternative text, which is supposed to be embedded beneath a graphical image so that the screen reader may vocalize a description of the graphic; (2) redundant links that result in additional navigation and repetition for keyboard and screen reader users; and (3) empty or missing form labels such that the function or purpose of the form control may not be presented to screen reader users. Doc. No. [1], p. 12, ¶ 18.

The parties have also filed various objections and motions, which the Court rules upon at the conclusion of this Order. In addition, on February 27, 2018, Defendant filed a Notice of Supplemental Authority (Doc. No. [24] ), to which Plaintiff has filed a response (Doc. No. [25] ). Plaintiff has also filed a Notice of Supplemental Authority (Doc. No. [26] ). The Court has given consideration to these filings.

"Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639, 129 S.Ct. 1862, 173 L.Ed.2d 843 (2009) (internal quotations and citations omitted). A party may challenge the subject-matter jurisdiction by filing a motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant indicates that it is raising a factual attack. Doc. No. [15], p. 10, n.3; see Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003) (internal citations omitted) ("Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits."). [W]hen the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

"Foremost among these requirements is injury in fact-a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized,' i.e., which 'affect [s] the plaintiff in a personal and individual way.' " Gill v. Whitford, --- U.S. ----, 138 S.Ct. 1916, 1929, 201 L.Ed.2d 313 (2018).

The Eleventh Circuit has also stated that "[i]t is not enough that 'the [plaintiff]'s complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements ....[as the court] 'should not speculate concerning the existence of standing, nor should [the court] imagine or piece together an injury sufficient to give plaintiff standing when [plaintiff] has demonstrated none .... If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury.' " Elend, 471 F.3d at 1206.

"Generally, when an ADA plaintiff lacks standing, it is because that plaintiff either has not encountered the alleged ADA violations by visiting the location or was unlikely to return to the location where the alleged violations occurred." Minnix v. Land O'Sun Mgmt. Corp., No. 3:14-CV-598-J-34PDB, 2014 WL 6909434, at *4 (M.D. Fla. Dec. 9, 2014).

The Eleventh Circuit has also noted that "[t]he Supreme Court's decision in Lexmark International, Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), effectively abolished prudential standing (sometimes referred to as statutory standing) as a jurisdictional doctrine that would give rise to a Rule 12(b)(1) dismissal without prejudice." Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1274 n.6 (11th Cir. 2018) ; see also Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007) (stating that statutory standing is an issue of subject matter jurisdiction and " '[s]tatutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury.").

The Wooden court also declined to "read the [Supreme] Court's jurisprudence as conflating the standing inquiry with resolution of the merits " and has rejected arguments that conceive "of the standing inquiry as duplicating an inquiry into the merits." Wooden, 247 F.3d at 1280. The Court also stated: "[a]lthough some overlap may be inevitable, standing doctrine was not intended to provide a vehicle for resolution at the threshold of fundamentally merits issues." Id. at p. 1280, n.16.

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' " Spokeo, 136 S.Ct. at 1548.

In Spokeo, the Supreme Court stated: "[a] 'concrete' injury must be 'de facto' ; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term-'real,' and not 'abstract.' " Spokeo, 136 S.Ct. at 1548 (citations omitted).

The Court recognizes that there is no Eleventh Circuit case on point and that there is non-binding authority that holds to the contrary. See Defendant's Notice of Supplemental Authority, Doc. No. [24].

As the 12(b)(1)/standing issue is a determinative, threshold matter, as explained infra , and the Court deems amendment of the Complaint to be proper at this time, the Court will not engage in a Rule 12(b)(6) /failure to state a claim analysis.